<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **IN RE: INSULIN PRICING LITIGATION** | **Case No. 2:23-md-03080 (BRM)(RLS)**<br>**MDL No. 3080** |
| **THIS DOCUMENT RELATES TO:** | **OPINION** |
| *People of the State of California v. Eli Lilly and Co., et al.,*<br><br>Case No. 2:24-cv-11488 | |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Plaintiff the People of the State of California's (the "People") Renewed Motion for Remand of this matter back to Los Angeles County Superior Court (the "Motion"). (ECF Nos. 486-1–2.) Defendants Express Scripts, Inc. ("Express Scripts") and CaremarkPCS Health, LLC ("Caremark") (collectively, "Defendants") each filed their own oppositions to the Motion (ECF Nos. 486-3; 486-4–10), and the People filed a reply (ECF No. 486-11). Following the filing of Defendants' Notice of Update in a Related Case regarding Defendants' Motion to Stay and Oppositions to the People's Renewed Motion to Remand, the People filed a Statement Addressing Defendants' Notice of Update in a Related Case (ECF No. 486-12), and Defendants filed their own Statement Addressing Notice of Update in a Related Case (ECF Nos. 486-13; 486-14). After this matter was transferred to this Court, the People filed a Supplemental Brief in Support of its Renewed Motion to Remand (ECF No. 486-15), and Express Scripts and Caremark each filed supplemental responsive briefs (ECF Nos. 486-16; 486-17). Having reviewed and considered the submissions filed in connection with the Motion, for the reasons set forth below

and for good cause having been shown, the People's Motion to Remand (ECF Nos. 486-1–2) is **DENIED**.

I.    BACKGROUND

A.  **Factual History**

The People bring this suit against three manufacturers of insulin: Eli Lilly and Company, Novo Nordisk Inc., and Sanofi-Aventis U.S. LLC (together, the "Manufacturer Defendants"); and three pharmacy benefit managers ("PBMs"), who manage the relationships between insurance providers and Manufacturer Defendants: Caremark, Express Scripts, and OptumRx, Inc. (together, the "PBM Defendants"). (ECF No. 486-10 ¶¶ 4–5.) Generally, the People allege the PBM Defendants conspired with the Manufacturer Defendants to artificially and unconscionably raise the price of insulin paid by California diabetics. (*Id*. ¶¶ 1–10.) Specifically, the Manufacturer Defendants—"who make nearly all of the insulin sold in the United States"—"aggressively raised the list price of insulin in lockstep with each other" so they may offer "secret rebates and fees . . . in exchange for favorable placement on the PBMs' standard formularies." (*Id*. ¶¶ 4, 7–8.) Based on these allegations, the People bring claims under the California Unfair Competition Law, CAL. BUS. & PROF. CODE § 17200, and for unjust enrichment. (*Id*. ¶¶ 261–74.)

B.  **Procedural History**

On January 12, 2023, the People filed its Complaint in this matter in Los Angeles County Superior Court. (Dkt. No. 2:24-cv-11488, ECF No. 1-1.) On March 15, 2023, Express Scripts removed the action to the Central District of California, invoking the federal officer removal statute, 28 U.S.C. § 1442. (Dkt. No. 2:24-cv-11488, ECF No. 1 (Notice of Removal).) That same day, Caremark filed a Supplemental Notice of Removal under the federal officer removal statute. (Dkt. No. 2:24-cv-11488, ECF No. 5.) The People filed their Motion to Remand the action back

to Los Angeles County Superior Court on April 14, 2023. (Dkt. No. 2:24-cv-11488, ECF No. 78.) On June 28, 2023, the Central District of California granted the People's Motion to Remand. (Dkt. No. 2:24-cv-11488, ECF No. 109.)

Caremark filed its Notice of Appeal to the Ninth Circuit Court of Appeals on July 5, 2023 (Dkt. No. 2:24-cv-11488, ECF No. 113), and Express Scripts filed its Notice of Appeal on July 6, 2023 (Dkt. No. 2:24-cv-11488, ECF No. 118). On August 13, 2024, the United States Court of Appeals for the Ninth Circuit issued a Memorandum "revers[ing] and remand[ing] to the district court to analyze California's remaining arguments for remanding to state court." (Dkt. No. 2:24-cv-11488, ECF No. 133 at 4.) The Ninth Circuit found that the People's Complaint "fail[ed] to *explicitly* release claims or possible recovery from rebate practices as they relate to [the Federal Employees Health Benefits Act ("FEHBA")] and TRICARE." *California v. CaremarkPCS Health LLC*, Civ. A. No. 23-55597, 2024 WL 3770326, at *1 (9th Cir. Aug. 13, 2024). The Ninth Circuit issued its Mandate on September 4, 2024.[1] (Dkt. No. 2:24-cv-11488, ECF Nos. 134–35.)

Also on September 4, 2024, Caremark filed a Notice of Potential Tag Along Action in the JPML identifying the case as a potential tag-along action for inclusion in the *In re Insulin Pricing* MDL. (Dkt. No. 2:24-cv-11488, ECF No. 137.) On September 11, 2024, the JPML entered a Conditional Transfer Order conditionally transferring the case to the *In re Insulin Pricing* MDL. (*Id*.) The People filed their Renewed Motion to Remand the Case to Los Angeles Superior Court on September 18, 2024. (Dkt. No. 2:24-cv-11488, ECF No. 138.) The JPML issued its Transfer Order transferring this action from the Central District of California to the *In re Insulin Pricing*

---

[1] Approximately one year prior, on August 3, 2023, the Judicial Panel on Multidistrict Litigation ("JPML") centralized the then-pending alleged insulin pricing scheme actions and transferred the multidistrict litigation ("MDL") to this Court in the District of New Jersey. *In re Insulin Pricing Litig.*, 688 F. Supp. 3d 1372, 1376 (J.P.M.L. 2023).

MDL No. 3080 on December 17, 2024. (Dkt. No. 2:23-md-03080, ECF No. 347; Dkt. No. 2:24-cv-11488, ECF No. 161.)

On February 13, 2025, this Court entered Case Management Order ("CMO") No. 18 (Order Governing Motions to Remand), which required the parties to refile the Renewed Motion to Remand "and all related exhibits, responses, replies, notices of supplemental authority, and responses thereto." (Dkt. No. 2:23-md-03080, ECF No. 427.) CMO No. 18 also granted the People leave to file a supplemental brief and for the Defendants to file supplemental responses thereto. (*Id*.) On March 31, 2025, the People filed their fully briefed Renewed Motion to Remand as an omnibus packet pursuant to CMO No. 18. (Dkt. No. 2:23-md-03080, ECF No. 486.)

## II.    LEGAL STANDARD

The federal officer removal statute, 28 U.S.C. § 1442(a)(1), allows certain officers of the United States and "private persons who lawfully assist [a] federal officer in the performance of his official duty" to remove state court actions against them to federal court. *Mohr v. Trs. of Univ. of Pa.*, 93 F.4th 100, 104 (3d Cir. 2024) (alteration in original) (quoting *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 151 (2007)). "Its central aim is protecting officers of the federal government from interference by litigation in state court while those officers are trying to carry out their duties." *Papp v. Fore-Kast Sales Co., Inc.*, 842 F.3d 805, 811 (3d Cir. 2016). To remove a case under the statute, a defendant must establish: (1) it is "'person' within the meaning of the statute"; (2) "plaintiff's claims must be based upon the defendant 'acting under' the United States, its agencies, or its officers"; (3) "plaintiff's claims against the defendant must be 'for or relating to' an act under color of federal office"; and (4) it has "a colorable federal defense to the plaintiff's claims." *Mohr*, 93 F.4th at 104 (quoting *Maglioli v. All. HC Holdings LLC*, 16 F.4th 393, 404 (3d Cir. 2021)).

"The burden is upon a defendant to show that removal is proper, and the federal court is obligated to 'strictly construe the removal statutes against removal and resolve any doubts in favor of remand.'" *N.J. Dep't of Env't Prot. v. Exxon Mobil Corp.*, 381 F. Supp. 2d 398, 402–03 (D.N.J. 2005) (quoting *Entrekin v. Fisher Sci. Inc.*, 146 F. Supp. 2d 594, 604 (3d Cir. 2001)). "[P]rivate actors seeking to assert the right of federal officer removal 'bear a special burden of establishing the official nature of their activities.'" *Id.* at 403 n.5 (quoting *Frieberg v. Swinerton & Walberg Prop. Servs., Inc.*, 245 F. Supp. 2d 1144, 1150 (D. Colo. 2002)).

## III.    DECISION

The People raise several arguments as to why this matter should be remanded back to Los Angeles County Superior Court. First, the People contend that their post-removal disclaimer statements should be given effect, eliminating any original jurisdiction claim and requiring remand. (ECF No. 486-1 at 3–5.) The People further contend this Court should reject any opposition arguments by Caremark or Express Scripts that they pleaded sufficient facts for removal under the federal officer removal statute despite the People's post-removal disclaimers. (*Id.* at 5–21.) The People next contend this Court should reject any opposition argument by Defendants that the post-removal disclaimers are illusory since remand is required absent the disclaimers. (*Id.* at 21–24.) Finally, the People argue this Court should grant their motion for remand, regardless of any post-removal disclaimers, pursuant to the Court's discretionary authority. (*Id.* at 24–25.)

### A.  The People's Post-Removal Disclaimers

The People contend this Court lacks jurisdiction because the People's post-removal disclaimers were effective to confirm they are not suing over TRICARE and FEHBA[2]. (ECF No. 486-1 at 3.) They state:

> The People disclaimed and are disclaiming the recovery of moneys (via restitution, disgorgement, or other form of monetary relief) from any Defendant paid by the federal government for FEHBA or TRICARE plan beneficiaries, enrollees, insureds, or members, or by such beneficiaries, enrollees, insureds, or members, or by such beneficiaries, enrollees, insureds, or members themselves pursuant to a FEHBA or TRICARE plan.

(*Id.* at 3, n.1) The People maintain their post-removal disclaimer statements demonstrate there is "no government-directed conduct left in the wake of Plaintiff's express disclaimer."[3] (*Id.* at 3–5.)

"To prevent a defendant from removing under the federal officer removal statute, plaintiffs often disclaim in their complaint claims that would serve as the basis for removal." *Gov't of P.R. v. Express Scripts, Inc.*, 119 F.4th 174, 186 (1st Cir. 2024). Federal district courts considering such disclaimers generally distinguish between two categories of § 1442(a)(1) disclaimers: (1) "express disclaimers of the claims that serve as the grounds for removal"; and (2) "artful pleading for purposes of circumventing federal officer jurisdiction." *Dougherty v. A O Smith Corp.*, Civ. A. No. 13-1972, 2014 WL 3542243, at *10 (D. Del. July 16, 2014); *see St. Charles Surgical Hosp. v. La. Health Serv. & Indem. Co.*, 990 F.3d 447, 451 (5th Cir. 2021) ("Generally, courts respect

---

[2] FEHBA establishes a comprehensive health insurance program for federal employees. 5 U.S.C. §§ 8901 *et seq*. FEHBA authorizes the Office of Personnel Management ("OPM") to contract with private carriers to provide federal employees with a variety of healthcare plans. 5 U.S.C. § 8902(a). "FEHBA assigns to OPM responsibility for negotiating and regulating health-benefits plans for federal employees." *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 683–84 (2006) (citing 5 U.S.C. § 8902(a)).

[3] *See* ECF No. 486-2 (collecting the People's disclaimer statements made in their prior motion to remand).

express disclaimers . . . so long as they are not merely artful pleading designed to circumvent federal officer jurisdiction." (internal quotation marks and citation omitted)).

"To defeat removal, an express disclaimer must 'explicitly renounce[] claims' 'upon which federal officer removal was based.'" *Gov't of P.R.*, 119 F.4th at 187 (alteration in original) (quoting *Batchelor v. Am. Optical Corp.*, 185 F. Supp. 3d 1358, 1363–64 (S.D. Fla. 2016)). "If a plaintiff renounces such claims, then a defendant is not entitled to 'a federal forum' in which 'to raise a defense arising out of his official duties,' 'because such a defense pertains to claims that simply do not exist.'" *Id.* (first quoting *Arizona v. Manypenny*, 451 U.S. 232, 241 (1981); then quoting *Batchelor*, 185 F. Supp. 3d at 1364). "Accordingly, a valid disclaimer must eliminate *any* basis for federal officer removal so that, upon remand, there is no possibility that a state court would have to determine whether a defendant acted under a federal officer's authority." *Id.* (citing *Batchelor*, 185 F. Supp. 3d at 1364). "Thus, disclaimers that 'clearly carve[] out certain factual bases, whether by time span or location, such that any alleged injury could not have happened under the direction of a federal officer' will prevent removal." *Id.* (quoting *Hawai'i ex rel. Lopez v. CaremarkPCS Health, LLC*, Civ. A. No. 23-464, 2024 WL 1907396, at *11 (D. Haw. May 1, 2024)).

On the other hand, disclaimers amounting to "artful pleading" "are never credited and come in a few varieties." *Id*. The first are disclaimers in which "the 'applicability [of the waiver] turns on the core question of whether a defendants' alleged tort was required or caused by their relationship with the federal government.'" *Healthcare Venture Partners, LLC v. Anthem Blue Cross & Blue Shield*, Civ. A. No. 21-29, 2021 WL 5194662, at *7 (S.D. Oh. Nov. 8, 2021) (alteration in original) (quoting *Martincic v. A.O. Smith Corp.*, Civ. A. No. 20-958, 2020 WL 5850317, at *3 (W.D. Pa. Oct. 1, 2020)). These disclaimers are ineffective because they "require[] a state court to determine the nexus 'between the charged conduct and federal authority.'" *Gov't*

of P.R., 119 F.4th at 188 (quoting *Willingham v. Morgan*, 395 U.S. 402, 409 (1969)). The second, equally ineffective, type of disclaimers "disavow[] claims based on a defendant's acts or omissions carried out under color of office, but the plaintiff, nonetheless s[eeks] to recover based on a defendant's official acts." *Batchelor*, 185 F. Supp. 3d at 1363. "Recognizing this disclaimer would deprive the federal officer of the right to have the adequacy of the threshold determination, whether there is federal subject matter jurisdiction under the federal officer removal statute, made by a federal court." *In re Asbestos Prods. Liab. Litig.*, 770 F. Supp. 2d 736, 742–43 (E.D. Pa. 2011). "Therefore, courts must determine whether, despite the disclaimer, the facts of the case make it likely that the plaintiff will hold a defendant liable for its official acts for which it possesses a colorable federal defense." *Gov't of P.R.*, 119 F.4th at 188.

The People's Complaint disclaimed any "challenge [to] the creation of custom formularies for a federal officer, such as for any [FEHBA] or TRICARE governed health benefits plan." (ECF No. 486-10 ¶ 42 n.1.) The People further clarified they "do[] not seek to recover moneys paid by the federal government pursuant to such plans, nor do[] [they] seek the recovery of federally mandated co-pays that were paid by such plans' patients." (*Id*.) However, the Ninth Circuit previously considered this disclaimer, finding that it "fail[ed] to *explicitly* release claims or possible recovery from rebate practices as they relate to FEHBA and TRICARE." *California*, 2024 WL 3770326, at *1. The Ninth Circuit held the People's "disclaimer does not necessarily defeat removal, because the rebate negotiations remain 'casually connected to the dispute.'" *Id.* (quoting *Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1244 (9th Cir. 2017)).

In support of its renewed Motion for Remand, the People submitted an appendix collecting the People's disclaimer statements in their prior motion to remand. (*See* ECF No. 486-2.) The People contend the appendix "contain[s] their statements confirming they are not suing over

TRICARE and FEHBA." (ECF No. 486-1 at 3 n.1.) The People point to their prior statement indicating:

> The Complaint does not challenge the Department of Defense's (DoD) operation of TRICARE, which provides civilian healthcare to certain persons associated with the military. Nor does the Complaint challenge the federal Office of Personnel Management's (OPM) operation of the Federal Employees Health Benefits Act (FEHBA) program, which provides healthcare to federal employees.

(ECF No. 486-2 at 1.) The People further elaborate "[i]n order to clarify any confusion on the part of Express Scripts or Caremark, the People specifically waived [in the Complaint] any relief against Express Scripts or Caremark relating to or arising out of TRICARE and FEHBA plans and reaffirm that waiver in this Motion."[4] (*Id.* (alteration in original).)

Caremark contends these post-removal statements should be disregarded because its FEHBA-rebate "negotiations were inextricably intertwined with negotiations for non-FEHBA clients," and thus, "the [People] cannot disclaim Caremark's federal conduct while challenging rebate negotiations." (ECF No. 486-4 at 11.)[5] Caremark asserts it "has instead shown that it negotiated with manufacturers for FEHBA and non-FEHBA rebates *at the same time* to create negotiating leverage (which benefits FEHBA Carriers)." (*Id.*) Caremark urges the People's "entire argument about Caremark's federal defense collapses" "[b]ecause the [People]'s disclaimer does

---

[4] "If, for instance, a person has health insurance through their private employer, again, we are seeking relief for such persons, for instance, if they have a high deductible health plan and they are paying in their deductible phase the full cash price of insulin, we are seeking relief on behalf of such individuals. If an individual has insurance directly, so they are not going through their employer, we are seeking relief on behalf of such individuals. That person does not have health insurance through TRICARE or health insurance through FEHBA. We are also seeking relief on [behalf of] persons on Medicare as pled in our Complaint. Such people, again, do not have health insurance through TRICARE or FEHBA." (ECF No. 486-2 at 3.)

[5] Express Scripts raises arguments similar to Caremark, and further relies on the fact "[t]he Ninth Circuit heard and rejected the [People]'s argument that [their] post-removal arguments were sufficient to defeat removal." (ECF No. 486-3 at 4.)

not actually remove Caremark's FEHBA negotiations from the case." (*Id.* at 12.) Caremark cites to Judge Ikuta's concurring opinion, explaining "in targeting Caremark's rebate negotiations for private clients, [the People] *necessarily also* target[] Caremark's rebate negotiations for the federal government (since they are the same negotiations)." (*Id.* at 9 (quoting *California*, 2024 WL 3770326, at *2 (Ikuta, J., concurring) (determining it would be an "err[or] [to] conclud[e] that a more carefully drafted disclaimer would defeat removal")).) The Court agrees.

The First Circuit recently considered a substantially similar issue in *Government of Puerto Rico*, wherein Puerto Rico sued PBMs—including Caremark and Express Scripts—for unlawfully inflating insulin prices through rebate negotiations and price setting. 119 F.4th at 179. Caremark removed the matter to federal court "on its theory that its PBM services for FEHBA were indivisible from its PBM services for private entities." *Id.* at 189. The First Circuit "credit[ed] Caremark's theory of the case—that its work for private clients was indivisible from its work for the federal government due to the structure of its rebate negotiations[.]" *Id.* Similar to the People here, Puerto Rico disclaimed "relief relating to any federal program, including FEHBA," and argued Caremark could not satisfy the "acting under" and "colorable federal defense" elements. *Id.* at 190. However, the court relied on Caremark's allegations "that it negotiates for rebates jointly for its FEHBA-based and non-FEHBA carriers," "[a]nd those negotiations lead to rebate agreements, which do not distinguish between FEHBA and non-FEHBA plans." *Id.* The First Circuit found:

> Considering the level of OPM's involvement in what provisions these rebate agreements must contain, holding Caremark liable for its role in the scheme to inflate insulin prices necessarily includes holding Caremark liable for its negotiations—negotiations that are at least in part for FEHBA plans, carried out pursuant to OPM's detailed requirements.

*Id*. Despite Puerto Rico disclaiming any "relief relating to any federal program (e.g., Medicaid, Medicare) or any contract related to a federal program," the court found "the disclaimer did not eliminate the possibility that the Commonwealth would recover for Caremark's official acts." *Id*. at 181–82, 194.

Here, the People's disclaimer and post-removal disclaimer statements are not sufficient to foreclose the possibility that the People would seek to recover for Defendants' actions to assist the federal government with administering FEHBA and TRICARE.[6] *See id.* at 183. Caremark maintains "it negotiated with manufacturers for FEHBA and non-FEHBA rebates *at the same time* to create negotiating leverage (which benefits FEHBA carriers)."[7] (ECF No. 486-4 at 11.) Express Scripts asserts that "under the [People]'s complaint, the [People] could recover penalties tied to a Manufacturer's increase in list prices and Express Scripts could be responsible for that through joint and several liability."[8] (ECF No. 486-3 at 14.) As the Ninth Circuit also found, Defendants sufficiently contend the work done on behalf of their private clients is too commingled with that done on behalf of their federal client. *See California*, 2024 WL 3770326, at *2 (Ikuta, J.,

---

[6] The Court acknowledges the People's argument that this matter is distinguishable from that of *Gov't of P.R.* because the plaintiff "did not argue the lack of an OPM-Caremark contract was relevant." (ECF No. 486-12 at 1.) However, this Court disagrees, as the court in *Gov't of P.R.* acknowledged that Caremark did not directly contract with OPM and specifically noted that "the absence of a direct contractual relationship with the federal government is not a bar to removing an action under § 1442(a)(1)." *Gov't of P.R.*, 119 F.4th at 182 n.2 (quoting *Cnty. Bd. of Arlington Cnty. v. Express Scripts Pharmacy, Inc.*, 996 F.3d 243, 254 (4th Cir. 2021)).

[7] Caremark further asserts: "Although the exact mix of clients covered by each Rebate Agreement negotiated by Caremark[] has changed over time, the agreements cover clients that offer health plans through the FEHBA clients, and are not exclusively limited to FEHBA clients. For most of the time period during which the [People] allege[] insulin prices increased, the same Rebate Agreements that covered FEHBA clients also covered most or all of Caremark[]'s commercial clients." (ECF No. 486-5 ¶ 6.)

[8] Express Scripts further elaborates: "Liability tied to an increase in list prices is connected or associated with Express Scripts' work for TRICARE because Express Scripts' compensation under the TRICARE Contract is directly impacted by changes to the WAC." (ECF No. 486-3 at 14.)

concurring) ("[I]f Caremark were liable for negotiating rebates on behalf of private clients, it would necessarily also be liable for negotiating rebates on behalf of the federal government—because it is the same negotiation.") ("Caremark's work for private clients cannot be disaggregated from its work for the federal government."); *see also Maryland v. 3M Co.*, 130 F.4th 380, 391 (4th Cir. 2025) (finding defendant satisfied nexus requirement where it "plausibly alleged" that the manufacturing of synthetical chemicals in their production of consumer (private) and industrial (government) products "intermingled to the point that it is impossible to identify their source"); *Gov't of P.R.*, 119 F.4th at 183 (finding a disclaimer invalid where it was "impossible to sever" federal and non-federal work based on defendant's simultaneous negotiation of rebates for federal and private clients); *cf. Connecticut v. EIDP, Inc.*, Civ. A. No. 24-239, 2024 WL 5135601, at *6–7 (D. Conn. Dec. 17, 2024) (remanding to state court because plaintiff completely disclaimed any relief from the federal government because defendant's production of federal and non-federal goods was not "indivisible"); *cf. Holste v. 3M Co.*, Civ. A. No. 24-9814, 2025 WL 100806, at *3 (C.D. Cal. Jan. 10, 2025) (granting plaintiff's remand motion where plaintiff's claims were not based on indivisible federal and non-federal work, rather, "[p]laintiff's disclaimer of any liability against [defendant] relating to military equipment resolves the casual nexus and colorable defense prongs of the federal officer removal test against removal"). Because the People have not foreclosed "*any* basis for federal officer removal," the People's renewed Motion for Remand on the basis of their disclaimer is **DENIED**. *See Gov't of P.R.*, 119 F.4th at 187.

### B.  The Federal Officer Removal Statute

The People argue generally that Caremark and Express Scripts cannot satisfy the requirements under the federal officer removal statute, asserting Defendants are not acting under a federal officer, their claims are not "for or relating to" an act under federal office, and they do

not have a colorable federal defense to the People's claims. (ECF No. 486-1 at 5–21; *see Mohr*, 93 F.4th at 104.) Caremark and Express Scripts dispute the People's position, arguing that they have met all elements under the federal office removal statute, implying federal court is the correct venue for this matter, and thus this Court should deny the People's motion for remand. (ECF Nos. 486-3 at 6–17, 486-4 at 17–25.)[9]

### 1. "Acting Under" Prong

The People argue this Court should "reject any opposition argument by the PBMs that they pleaded sufficient facts for the 'acting under' prong despite the post-removal disclaimers." (ECF No. 486-1 at 5–10.) The People contend: (1) the Defendants were not acting under a federal officer but were "merely compl[ying] with federal directives" (*id.* at 6 (citing *Riggs v. Airbus Helicopters, Inc.*, 939 F.3d 981, 989 (9th Cir. 2019)); and (2) "a defendant being sued for its private conduct cannot meet the 'acting under' requirement by reference to work performed for the federal government where its federal acts are not 'the subject of the [plaintiff's] complaint" (*id.* (quoting *Watson*, 551 U.S. at 147 (alteration in original))).

To satisfy the "acting under" prong, a defendant must show that the plaintiff's allegations "involve conduct that occurred when [the defendant] was 'acting under' the direction of a federal officer or agency." *Papp*, 842 F.3d at 813. "When . . . 'the federal government uses a private corporation to achieve an end it would have otherwise used its own agents to complete,' that

---

[9] The People do not challenge the status of Caremark and Express Scripts as "persons" under the federal officer removal statute. (*See generally*, ECF No. 486-1.) As such, this Court will assume Caremark and Express Scripts qualify as "persons" under the statute. *See Orthopedic Specialists of N.J. PA v. Horizon Blue Cross/Blue Shield of N.J.*, 518 F. Supp. 2d 128, 134 (D.N.J. 2007) ("Most courts, it appears, have held that a corporation qualifies as a 'person' for purposes of the federal officer removal statute." (cleaned up) (citing *Exxon Mobil Corp.*, 381 F. Supp. 2d at 403)); *see also Reg'l Med. Transp., Inc. v. Highmark, Inc.*, 541 F. Supp. 2d 718, 723 (E.D. Pa. 2008) (finding corporation acting as Medicare Part B carrier qualified as "person" for purposes of federal officer removal statute).

contractor is 'acting under' the authority of a federal officer." *Id.* at 812 (quoting *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1181 (7th Cir. 2012)). "In other words, '[t]he [private] party does the business of the federal government and not merely its own.'" *Mohr*, 93 F.4th at 105 (alterations in original) (quoting *Doe v. BJC Health Sys.*, 89 F.4th 1037, 1043 (8th Cir. 2023)).

"The 'acting under' requirement, like the federal removal statute overall, is to be 'liberally construe[d]' to cover actions that involve 'an effort to *assist*, or to help *carry out*, the federal supervisor's duties or tasks.'" *Papp*, 842 F.3d at 812 (alteration in original) (quoting *Ruppel*, 701 F.3d at 1181). The defendant is not "required to [demonstrate] that the complained-of conduct *itself* was at the behest of a federal agency." *In re Commonwealth's Motion to Appoint Couns. Against or Directed to Defender Ass'n of Phila.*, 790 F.3d 457, 470 (3d Cir. 2015); *see also Mohr*, 93 F.4th at 105 ("This 'special relationship' arises when the federal government 'delegat[es] . . . legal authority' to the private party to 'undertake' a duty or task 'on the Government['s] . . . behalf." (alterations in original) (quoting *Watson*, 551 U.S. at 156–57)). "[I]t is sufficient for the 'acting under' inquiry that the allegations are directed at the relationship between the [defendant] and the [federal officer or agency]." *Papp*, 842 F.3d at 813 (second and third alterations in original) (quoting *Defender*, 790 F.3d at 470). This relationship "typically involves subjection, guidance, or control." *Watson*, 551 U.S. at 151 (internal citations omitted).

"Merely complying with federal laws and regulations is not 'acting under' a federal officer for purposes of federal-officer removal." *Maglioli*, 16 F.4th at 404. "That includes private parties who are 'subject to detailed regulations and whose activities are highly supervised and monitored[.]'" *Mohr*, 93 F.4th at 105 (alteration in original) (quoting *Maglioli*, 16 F.4th at 404). "Defendants must demonstrate something beyond regulation or compliance. They must show 'that their actions "involve an effort to *assist*, or to help *carry out*, the duties or tasks of the federal

superior."'" *Moor v. Alliance HC 11 LLC*, Civ. A. No. 22-04472, 2023 WL 2744022, at *6 (internal citations omitted) (quoting *Maglioli*, 16 F.4th at 404).

### a. Caremark

As to Caremark, the People contend they properly disclaimed Caremark's conduct for FEHBA plans because Caremark has not pled facts showing that it was subject to OPM's "subjection, guidance, or control" or is helping OPM carry out its duties by servicing non-FEHBA plans. (ECF No. 486-1 at 7–9 (quoting *Watson*, 551 U.S. at 151–52).) The People specifically argue: (1) "Congress did not authorize OPM to act on matters unrelated to federal employees," and (2) "Caremark never alleged, nor pleaded facts showing, that OPM acted outside its congressionally defined authority by dictating Caremark's non-FEHBA conduct."[10] (*Id.* at 8.)

Caremark responds it is "act[ing] under the direction of a federal agency when it negotiates for rebates OPM requires to be passed through to FEHBA Carriers to reduce the general government's FEHBA-related costs." (ECF No. 486-4 at 17–23.) Caremark argues it is assisting the government in fulfilling "basic governmental tasks" by negotiating prices of insulin under FEHBA and non-FEHBA together, which helps ensure a lower costs of insulin under FEHBA plans. (*Id.* at 19.) Caremark asserts, pursuant to its contract with the carrier, that OPM "sets forth specific standards PBMs must follow, and subjects Caremark to 'continued monitoring, oversight, and supervision by OPM over [Caremark's] performance of its PBM services . . . , including its

---

[10] In their Supplemental Brief in Support of Renewed Motion to Remand, the People contend Caremark meets none of the criteria the Third Circuit analyzes in determining whether a party is "acting under" a federal officer, arguing: (1) "Caremark has no contract with OPM"; (2) "Caremark is not providing a service that OPM would otherwise have to provide"; (3) removal is improper because "Caremark provides FEHBA and private plans the same rebate service simultaneously"; (4) "Congress did not grant legal authority to Caremark to act on behalf of OPM"; and (5) Caremark's claims fail to demonstrate sufficient "control and oversight" of rebate negotiations by OPM. (ECF No. 486-15 at 2–3.)

practices regarding [rebates].'" (*Id.* (alterations in original) (quoting Declaration of Matthew Osterle in Support of Caremark's Opposition, ECF No. 486-6 ¶ 6).) In further support of its argument, Caremark cites to OPM's "regularly issue[d] guidance letters to FEHBA Carriers and to PBMs clarifying the standards PBMs must follow." (*Id.*)

A private party is not acting under a federal officer "simply because [that] party has a contractual relationship with the federal government." *Mohr*, 93 F.4th at 106 (citing *City of Hoboken v. Chevron Corp.*, 45 F.4th 699, 713 (3d Cir. 2022) (finding companies producing oil pursuant to government leases were not acting under the government because the leases did not "impose close federal control" and the oil was not specifically produced for the government)). Instead, courts must "look to the nature of the relationship between the private party and the federal government." *Id.* (citing *Watson*, 551 U.S. at 152–54). "[I]n the absence of a contractual relationship with the government, a removing party must provide evidence of a 'special relationship' that is 'distinct from the usual regulator/regulated relationship.'" *Att'y Gen. v. Dow Chem. Co.*, Civ. A. No. 23-2449, 2024 WL 3361395, at *4 (D.N.J. July 9, 2024) (quoting *Cnty. of Lehigh v. Atl. Richfield Co.*, Civ. A. No. 18-5140, 2019 WL 2371783, at *7 (E.D. Pa. June 5, 2019)). This relationship "typically involves subjection, guidance, or control." *Watson*, 551 U.S. at 151.

"Congress assigned to [OPM] 'broad administrative and rulemaking authority over' the FEHBA program, including authorizing OPM to contract with private carriers for federal employees' health insurance." *Gov't of P.R.*, 119 F.4th at 182 (quoting *Coventry Health Care of Mo., Inc. v. Nevils*, 581 U.S. 87, 91 (2017)); *Empire*, 547 U.S. at 683 ("FEHBA assigns to OPM responsibility for negotiating and regulating health-benefits plans for federal employees."). OPM contracts with private carriers "shall contain a detailed statement of benefits offered and shall

include such maximums, limitations, exclusions, and other definitions of benefits as [OPM] considers necessary or desirable." 5 U.S.C. § 8902(d). "OPM has direct and extensive control over these benefits contracts under the FEHBA." *Gov't of P.R.*, 119 F.4th at 182 (quoting *Goncalves*, 865 F.3d at 1246). "And OPM's standard form contracts assume that PBMs will contract with FEHBA carriers and receive rebates." *Id.* (citing Off. of Pers. Mgmt., *Federal Employees Health Benefits Program Standard Contract for Experience-Related Health Maintenance Organization Carriers* I-18-I-20 (2019)).

As explained in Caremark's Supplemental Notice of Removal, Caremark contracts with FEHBA carriers to "provide[] delegated pharmacy benefit management services, including with regard to formularies and rebate payments." (Dkt. No. 2:24-cv-11488, ECF No. 5 at 3.) Caremark then "negotiates with pharmaceutical drug manufacturers in order to obtain rebates that help offset the cost of prescription drugs," culminating in "Rebate Agreements." (ECF No. 486-5 ¶ 4.) However, Caremark "does not negotiate separate Rebate Agreements for each of its clients," rather, "Rebate Agreements are structured so as to cover a range of different clients and different formulary possibilities, including standard and custom formularies. (*Id.* ¶ 5; *see also id.* ¶ 6 ("For most of the time period during which the State alleges insulin prices increased, the same Rebate Agreements that covered FEHBA clients also covered most or all of Caremark[]'s commercial clients.").)

Caremark claims "OPM imposes various requirements and exercises oversight regarding PBMs' formulary and rebate-payment practices for FEHBA plans." (Dkt. No. 2:24-cv-11488, ECF No. 5 at 3.) "Pursuant to OPM's directives, the contracts between Caremark[] and its FEHBA clients mandate pass-through transparent pricing." (ECF No. 486-6 ¶ 5.) Pursuant to its contracts with FEHBA carriers, Caremark "must agree to continued monitoring, oversight, and supervision"

by OPM. (*Id.* ¶ 6.) Indeed, the Standard Contract contains specific "Transparency Standards," which mandate "pass-through transparent pricing based on the PBM's cost for drugs . . . in which the Carrier receives the value of the PBM's negotiated discounts, rebates, credits or other financial benefits." (ECF No. 486-8 at I-18.) With regard to this transparent pricing, PBMs are instructed to: (1) charge the Carrier no more than the amount it pays pharmacies for drugs plus a dispensing fee; (2) charge the Carrier the cost of drugs at mail order pharmacies based on the actual cost, plus a dispensing fee[11]; and (3) credit the Carrier the value of all Manufacturer Payments properly allocated to the Carrier. (*Id.*) Under these standards, PBMs are required to "identify sources of profit to the Carrier and OPM as it relates to the FEHB[A] contract" and "to disclose each administrative fee to the Carrier and OPM." (*Id.*) PBMs are additionally required to provide the Carrier with quarterly and annual Manufacturer Payment Reports (the requirements of which are detailed in the Standard Contract) and with all financial and utilization information requested by the Carrier at least annually. (*Id.*) Finally, "OPM reserves the right to review and receive any information and/or documents the Carrier receives from the PBM[.]" (*Id.*)

This is a "'classic case' in which a private corporation acts under a federal officer for purposes of removal 'relates to government contractors' that 'help[]the government produce an item that it need[s].'" *Doe v. Redeemer Health*, Civ. A. No. 23-2405, 2023 WL 6323089, at *3 (E.D. Pa. Sept. 28, 2023) (alterations in original) (quoting *Papp*, 842 F.3d at 812). Here, Caremark is acting as a subcontractor in order to provide necessary PBM services to effectuate federal employees' healthcare plans under FEHBA. This is a basic government task which, "in the absence of a contract with a private firm, the Government itself would have had to perform." *See Watson*,

---

[11] Of note, the Standard Contract requires the "[c]osts [of drugs at mail order pharmacies] shall not be based on industry benchmarks; for example, Average Acquisition Cost (AAC) or *Wholesale Acquisition Cost (WAC)*." (ECF No. 486-8 at I-18 (emphasis added).)

551 U.S. at 153; *Gov't of P.R.*, 119 F.4th at 190 (finding Caremark's rebate negotiations for insulin prices was "related to acts Caremark performed under OPM's authority"); *Defender*, 790 F.3d at 469 (explaining nonprofit community defender acts under federal officer by representing indigent federal defendants in part because it is delegated authority from the federal government and provides service the federal government would otherwise have to provide itself).

The People contend their disclaimer establishes Caremark was not acting under Congress with regard to private healthcare plans (ECF No. 486-1 at 8–9), but Caremark responds it does not distinguish between FEHBA and non-FEHBA plans when negotiating rebates with manufacturers (ECF No. 486-4 at 19). As the Court in *Government of Puerto Rico* concluded: "When Caremark negotiates rebates on behalf of FEHBA carriers, it assists OPM in carrying out its official task of administering federal health benefits." 119 F.4th at 190 (citing *Lopez*, 2024 WL 1907396, at *9 (crediting "Caremark's theory of the case—that its work for private clients was indivisible from its work for the federal government due to the structure of its rebate negotiations" and concluding Caremark acted under federal officer with respect to "its formulary and rebate practices"); *cf. Redeemer Health*, 2023 WL 6323089, at *5 (explaining that "the contractor in *Papp* was never specifically directed to use asbestos in its airplane designs [because] the Third Circuit rejected the notion that 'the complained-of conduct [must be] done at the specific behest of the federal officer or agency.'" (second alteration in original) (citing *Papp*, 842 F.3d at 813)).[12] The Court further

---

[12] *But see W. Va. ex rel. McCuskey v. Eli Lilly & Co.*, Civ. A. No. 24-143, 2024 WL 4357749, at *4–5 (N.D. W. Va. Sept. 6, 2024) (finding Caremark was not acting under a federal officer with respect to non-FEHBA plans because "Caremark chose to enter into some negotiations on behalf of federal and non-federal health benefit programs"). However, in that case, the State's claims were "strictly limited to non-federal payments made by the State through its self-insured, statewide WVPEIA plan, which 'is a discrete and readily identifiable category whose membership does not require the state court to consider the contours of the federal officer removal statute.'" *Id.* (quoting *Healthcare Venture Partners*, 2021 WL 5194662, at *8). However, here, the People offer no

found "OPM dictates several contractual provisions that Caremark must adhere to in entering these rebate agreements—requiring Caremark to file regular statements about whatever rebates its received, credit carriers for rebates where appropriate, and provide OPM with information related to its rebate agreements." *Id.*; *see also* ECF No. 486-8 at I-18–19.

Moreover, "[t]hese contractual obligations demonstrate OPM exercised detailed supervision and monitoring over Caremark's provision of PBM services to FEHBA carriers, such that Caremark was acting under federal authority when it negotiated rebates." *Id.* (citing *Lopez*, 2024 WL 1907396, at *7–9). By agreeing to provide these services for the federal government, Caremark agreed to: (1) provide the carrier with all financial and utilization information at least annually; (2) allow OPM to review and receive any information and/or documents that Caremark provides to the carrier; (3) provide information regarding its formularies; and (4) provide to OPM upon request all Caremark records. (ECF No. 486-8 at I-19.) While it is true that "private entities are not 'acting under' the supervision of a federal officer merely because they act in accordance with federal regulations," *Redeemer Health*, 2023 WL 6323089, at *3 (citing *Maglioli*, 16 F.4th at 404), these specific disclosure requirements enacted by OPM go far beyond mere compliance with federal regulation. *See Defender*, 790 F.3d at 469–70 (finding the nonprofit community defender was "acting under" the Administrative Office of the United States Courts ("AO") where nonprofit community defender was required to comply with AO guidelines, submit reports, and undergo yearly audits, despite there being no indication the AO exercised any real control over nonprofit community defender's day-to-day operations); *see also Lopez*, 2024 WL 1907396, at *6–9 (concluding Caremark's actions regarding its formulary and rebate practices were actions under

---

similar finite universe of claims that can be separated from Caremark's rebate negotiations. (*See generally*, 486-2.)

OPM where the formularies used by PBMs were subject to OPM reporting and disclosure requirements and PBMs were subject to audits by OPM); *see also Gov't of P.R.*, 119 F.4th at 191 ("[I]f Caremark is liable for its conduct in negotiating rebates for private clients and FEHBA plans, then it could be liable for its conduct under OPM's direction—no matter what the disclaimer says.").

As such, this Court finds that Caremark was "acting under" OPM in negotiating rebates.

### b. Express Scripts

The People similarly argue the DoD does not control Express Scripts' non-TRICARE conduct, meaning Express Scripts "failed to demonstrate it was 'acting under' a federal officer when engaging in the conduct challenged in this action." (ECF No. 486-1 at 9–10.) The People contend their "post-removal disclaimers limit the scope of this action to [Express Scripts'] civilian conduct," which Express Scripts cannot argue it is "acting under" the DoD when servicing civilian plans. (*Id*.)

Express Scripts responds the People's disclaimers cannot impact Express Scripts' allegations that it was "acting under" a federal officer, as Express Scripts has "easily demonstrated that it assists and carries out the duties of the federal officers managing the DoD TRICARE health-care program." (ECF No. 486-3 at 7–10.) "As explained in Express Scripts' Notice of Removal, the DoD contracted with Express Scripts to provide [PBMs] to members of the DoD's TRICARE health-care program across the country, including in California." (*Id*. at 7.) Express Scripts asserts this contract "establishes the requirements applicable to Express Scripts and dictates nearly every aspect of Express Scripts' responsibilities in supporting TRICARE," and "requires the use of a 'DoD Uniform Formulary, a tiered cost sharing structure, and a preference for generic over branded products.'" (*Id*. at 7–8 (quoting Dkt. No. 2:24-cv-11488, ECF No. 1-2 (TRICARE

Contract) at § C.1.4).) The contract also sets forth specific requirements regarding the collection of copayments for prescription drugs. (*Id*. at 8.)

"TRICARE is a federal health insurance program administered by DoD to 'provide[] medical care to current and retired service members and their families . . . .'" *Arlington*, 996 F.3d at 253 (alterations in original) (quoting *U.S. ex rel. Lutz v. United States*, 853 F.3d 131, 140 n.2 (4th Cir. 2017)). "DoD is required by law to enter into contracts for the provision of healthcare services to TRICARE members." *Id*. (citing 10 U.S.C. § 1073a). "[B]y operating various TRICARE programs, . . . contractors and subcontractors are providing healthcare services that DoD must, by law, provide." *Id*. (citing 10 U.S.C. § 1073a). "In this way, the [Express Scripts] Defendants are assisting DoD in fulfilling 'basic governmental tasks' that 'the Government itself would have had to perform' if it had not contracted with the private firm." *Id*. (citing *Watson*, 551 U.S. at 153–54).

Here, just as with Caremark, the Court finds Express Scripts was "acting under" the DoD with regard to the actions at issue—rebate negotiations. *See supra* § III.B.1.a. *See also Arlington*, 996 F.3d at 251 (finding Express Scripts pharmacies, who contracted with DoD, were "acting under" a federal officer because the pharmacies, through operation of its mail-order program, provided services to members of the DoD's healthcare program, and pharmacies were always subject to the federal government's guidance and control with regard to operation of the mail-order program); *In re Nat'l Prescription Opiate Litig.*, Case No. 17-md-2804, 2023 WL 166006, at *4– 5 (finding Express Scripts defendants were "acting under" the DoD because "[t]he DoD would have to administer the TRICARE program itself if the task was not delegated to Defendants"); *Lombardi v. TriWest Healthcare All. Corp.*, Civ. A. No. 08-2381, 2009 WL 1212170, at *2 (D. Ariz. May 4, 2009) (finding "[i]n administering TRICARE benefits, defendants do more than

22

operate in a regulated industry . . . . [and] are closely aligned with the government" and are therefore "acting under federal control within the meaning of 28 U.S.C. § 1442(a)").

### 2. "For or Relating to" Prong

The People next contend Caremark and Express Scripts cannot establish a causal connection because the People's post-removal disclaimers "are comprehensive enough to preclude Caremark and [Express Scripts] from establishing that this lawsuit is 'for or relating to any act under color of such office.'" (ECF No. 486-1 at 12–14 (quoting 28 U.S.C. § 1442(a)).) The People explain that Caremark and Express Scripts cannot establish this lawsuit is "relating to" acts taken under OPM or the DoD because "[t]his lawsuit is not seeking to impose liability for Caremark's and [Express Scripts'] compliance with federal directives, impose any remedies, equitable or monetary, for such compliance, or prevent Caremark and [Express Scripts] from complying with such directives in the future." (*Id*. at 12.)  In other words, the causal connection prong fails because Caremark and Express Scripts cannot assert they are "act[ing] under color of such office" when negotiating rebates for their private clients. (*Id*. at 13.)

Caremark responds the People challenge "Caremark's performance of PBM services, including its rebate negotiation practices," which are "precisely the duties Caremark performs pursuant to OPM's direction and control to help provide FEHBA benefits." (ECF No. 486-4 at 23 (internal quotation marks and citation omitted).) Thus, the challenged conduct is connected or associated with the federal office. (*Id*.; ECF No. 486-17 at 4).) Express Scripts raises a similar argument, arguing that under the People's theory of the case and refusal to abandon joint and several liability, Express Scripts "faces potential exposure based solely on the Manufacturers' decision to raise their list prices for insulin products." (ECF No. 486-3 at 11–14; ECF No. 486-16 at 4–5.)

"The third requirement [under the federal officer removal statute] is that 'the plaintiff's claims against the defendant [be] for, or relating to an act under color of federal office.'" *Golden v. N.J. Inst. of Tech.*, 934 F.3d 302, 310 (second alteration in original) (quoting *Papp*, 842 F.3d at 812). The Third Circuit has "taken a more permissive view of [the 'for or relating to'] requirement." *Papp*, 842 F.3d at 813. Accordingly, it is "sufficient for there to be a connection or association between the act in question and the federal office." *Id.* (quoting *Defender*, 790 F.3d at 471); *see also Spark Inspiration Lab'y, LLC v. UnitedHealthcare Ins. Co.*, Civ. A. No. 23-2890, 2024 WL 3541929, at *5 (D.N.J. May 17, 2024) (noting defendant "is not required to plead such a 'causal nexus' to establish that its actions were 'for or relating to' a federal office").

Caremark's Supplemental Notice of Removal asserts it is a PBM acting under FEHBA, and thereby OPM, with private carriers to provide federal employees' health insurance. (Dkt. No. 2:24-cv-11488, ECF No. 5 at 5–11.) Express Scripts' Notice of Removal states that it is a PBM operating under and pursuant to a contract with the DoD "to provide pharmacy benefits to members of the DoD's TRICARE health care program," for which "[t]he DoD is required by law to engage companies like Express Scripts for the provision of healthcare services to TRICARE members." (Dkt. No. 2:24-cv-11488, ECF No. 1 ¶¶ 24–25.) Because the rebate negotiations were made pursuant to Caremark's and Express Scripts' subcontracts and contracts under FEHBA and TRICARE, the Court finds Caremark and Express Scripts have satisfied the third requirement under § 1442(a)(1) by establishing a connection or association with OPM and DoD respectively. *See Spark Inspiration Lab'y*, 2024 WL 3541929, at *5 (finding a connection or association with the Center for Medicare Services for failure to pay claims not based on Medicare but made pursuant to defendant's contract with the government agency).

### 3. Colorable Federal Defense Prong

The final element the Court must consider under the federal officer removal statute is whether a defendant has raised a colorable defense to the People's claims. The People argue this matter is not subject to federal jurisdiction because Caremark and Express Scripts cannot assert a colorable federal defense given "the People's lawsuit is not challenging [Defendants'] FEHBA or TRICARE conduct due to the post-remand disclaimers." (ECF No. 486-1 at 14.)

For a defense to be considered colorable, a defendant need only show "the defense was 'legitimate and [could] reasonably be asserted, given the facts presented and the current law.'" *Papp*, 842 F.3d at 815 (alteration in original) (citation omitted). The defendant does not need to "demonstrate that the asserted defense will succeed on the merits; a finding that [the defendant] 'may prevail' is sufficient." *Spark Inspiration Lab'y*, 2024 WL 3541929, at *6 (quoting *Papp*, 842 F.3d at 815); *see also Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 782–83 (E.D. Pa. 2010) ("[A] defense is colorable for purposes of determining jurisdiction under Section 1442(a)(1) if the defendant asserting it identifies facts which, viewed in the light most favorable to the defendant, would establish a complete defense at trial.").

#### a. Caremark

The People contend Caremark cannot demonstrate a colorable federal defense because the People are not challenging any FEHBA conduct. (ECF No. 486-1 at 15–19.) This precludes Caremark from asserting either express preemption or obstacle preemption under FEHBA. (*Id.*) Specifically, the People rely on the FEHBA Standard Contract, which "expressly excludes from its scope non-FEHBA plans." (*Id.* at 16.) The People contend Caremark cannot assert express preemption under FEHBA because "the People expressly limited their lawsuit to Caremark's non-FEHBA conduct." (*Id.*) The People further argue Caremark cannot employ an express preemption

defense under FEHBA because "[c]laims not premised on a health plan or its administration do not 'relate to' that health plan." (ECF No. 486-15 at 6 (citing *Ahn v. Cigna Health & Life Ins. Co.*, Civ. A. No. 19-07141, 2019 WL 5304628, at *5 (D.N.J. Oct. 21, 2019)).)

Caremark responds the People's claims are preempted by the FEHBA express preemption provision, as its conduct "*relate*[*s*] *to* the nature, provision, or extent of coverage or benefits (including payments with respect to benefits)" under FEHBA's Standard Contract. (ECF No. 486-4 at 24–25.) Caremark contends the term "relate to" "must be given an expansive definition," and thus, "Caremark's argument that the PBM provisions also are preemptive is at least colorable." (*Id*. at 24.)

"FEHBA concerns 'benefits from a federal health insurance plan for federal employees that arise from a federal law' in an area with a 'long history of federal involvement.'" *Coventry Health Care*, 581 U.S. at 96 (quoting *Bell v. Blue Cross & Blue Shield of Okla.*, 823 F.3d 1198, 1202 (8th Cir. 2016)).  FEHBA contains an express preemption provision which states the "terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law . . . which relates to health insurance or plans." 5 U.S.C. § 8902(m)(1). The purpose of this preemption provision is to ensure uniformity in the administration of FEHBA benefits regardless of any dissimilar state provisions that may otherwise be applicable. *See Coventry Health Care*, 581 U.S. at 96. "FEHBA contract terms have preemptive force only if they fall within § 8902(m)(1)'s preemptive scope." *Id.* at 89.

"A FEHBA preemption analysis . . . requires determining whether the allegedly preemptive portions of the OPM contract actually 'relate to . . . coverage or benefits.'" *Cal. Spine & Neurosurgery Inst. v. Nat'l Ass'n of Letter Carriers Health Benefit Plan*, 548 F. Supp. 3d 934, 944

(N.D. Cal. 2021) (second alteration in original). Federal courts have "'repeatedly recognized' that the phrase 'relate to' in a preemption clause 'express[es] a broad pre-emptive purpose.'" *Coventry Health Care*, 581 U.S. at 95–96 (alteration in original) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992)). "Congress characteristically employs the phrase to reach any subject that has 'a connection with, or reference to,' the topics the statute enumerates." *Id*. at 96 (quoting *Morales*, 504 U.S. at 384).

In its Supplemental Notice of Removal, Caremark contends it has colorable preemption-based defenses, as "the contractual terms imposed by OPM authorize PBMs to negotiate for and collect Manufacturer Payments" and "require PBMs to disclose Manufacturer Payments as reductions to the costs associate with prescription drugs, including insulin." (Dkt. No. 2:24-cv-11488, ECF No. 5 at 12.) Caremark further states "the contractual terms imposed by OPM authorize Manufacturer Payments in connection with formulary placement and/or access." (*Id*.) Caremark asserts the People's requested relief would "interfere with the PBM Defendants' obligations to comply with their responsibility to OPM pursuant to FEHBA contracts." (*Id*. at 12.)

Construing the facts in a light most favorable to Caremark[13], and considering FEHBA's broad preemptive purpose, Caremark's allegations are sufficient to raise a colorable defense. *See Hagen*, 739 F. Supp. 2d at 781 ("[A] colorable defense need not be proven at this stage of the litigation due to the broad removal right the statute creates[.]") Though the People contend FEHBA preemption is limited to FEHBA-conduct, Caremark contends, and the Court acknowledges, the rebate negotiations for FEHBA and non-FEHBA carriers undertaken by Caremark were done together and cannot be separated or unwound. *See Gov't of P.R.*, 119 F.4th at 191 (finding

---

[13] *See Hagen*, 739 F. Supp. 2d at 782–83 (finding, for purposes of determining jurisdiction under § 1442(a)(1), a defense colorable "if the defendant asserting it identifies facts which, viewed in the light most favorable to the defendant, would establish a complete defense at trial").

Caremark was entitled to have a federal court weigh in on the validity of its FEHBA preemption defense because Caremark negotiates for rebates for its FEHBA-based and non-FEHBA carriers jointly and "these negotiations allegedly cannot be disassembled"); *see Lopez*, 2024 WL 1907396, at *13 (finding Caremark had a colorable federal defense where Caremark was contractually obligated to pass along all rebates to their FEHBA carrier clients because "Caremark's formulary practices that are at issue in this case arguably relate to the coverage or benefits that the FEHBA carrier clients provide to their insureds"). This Court finds Caremark has satisfied all necessary requirements for removal under § 1442(a)(1).[14]

### b. Express Scripts

Similarly, the People argue Express Scripts has not raised any colorable federal defenses. (ECF No. 486-1 at 19–21.) The People first contend Express Scripts cannot assert a colorable preemption defense under TRICARE because the People's post-removal disclaimers limit the challenged conduct to civilian conduct, whereas TRICARE pertains to military healthcare plans. (*Id.* at 19–20.)[15] The People further contend Express Scripts' "government contractor defense is

---

[14] By finding Caremark can invoke subject matter jurisdiction under the federal officer removal statute (28 U.S.C. § 1442(a)), the Court has found removal is authorized. *See Gov't of P.R.*, 119 F.4th at 182 ("[T]he statute 'authorizes removal of the entire action even if only one of the controversies it raises involves a federal officer or agency.'" (quoting *Moore v. Elec. Boat Corp.*, 25 F.4th 30, 35 (1st Cir. 2022))). However, this Court finds Express Scripts has also established a colorable federal defense, as discussed *infra* Section III.B.3.b.

[15] The People's moving papers additionally argued the government contractor defense is unavailable to Express Scripts because the Ninth Circuit limits the government contractor defense to "contractors who design and manufacture military equipment," and Express Scripts is a PBM who does not allege it designs or manufactures military equipment. (ECF No. 486-1 at 21 (quoting *Cabalce v. Thomas E. Blanchard & Assocs., Inc.*, 797 F.3d 720, 731 (9th Cir. 2015)).) However, the People appear to have abandoned this argument, as it was not raised in the People's Supplemental Brief in Support of Renewed Motion to Remand, which pertains to Third Circuit caselaw. (*See generally* ECF No. 486-15.)

also not colorable since [Express Scripts] has not pleaded the DoD participated in preparing specifications for insulin rebate negotiations." (ECF No. 486-15 at 4.)

Express Scripts responds by again arguing the People's "disclaimers fail to remove the connection between the [People]'s claims and Express Scripts' work for TRICARE." As this Court has determined, *supra* §§ III.A, III.B.3.a, Express Scripts' TRICARE and non-TRICARE rebate negotiations cannot be extricated, hence Express Scripts has raised a colorable federal defense. The Court therefore need not address the People's argument regarding Express Scripts' government contractor defense, as "[o]ne colorable defense is sufficient to satisfy this prong." *N.J. Dep't of Env't Prot. v. E.I. Du Pont de Nemours & Co.*, Civ. A. No. 19-14765, 2020 WL 2611539, at \*6 (D.N.J. May 22, 2020).

### C. Remand is Required Even Absent the Disclaimers

The People argue this Court should reject any opposition argument by Defendants on the basis that remand is required regardless of the People's post-removal disclaimers because: (1) Caremark cannot establish it was "acting under" a federal officer by providing OPM a "normal commercial product"; (2) "insulin rebates are not FEHBA benefits nor payments for FEHBA benefits"; and (3) there are no insulin rebate negotiations under the TRICARE contract. (ECF No. 486-1 at 21–24.)

Express Scripts contend the People's challenges to removal are premised on the sufficiency and effectiveness of the People's disclaimers "*as they existed at the time of removal*," which did not have the effect of eliminating Express Scripts' federal defenses. (ECF No. 486-3 at 17–18.) Caremark raises a similar argument, asserting the People's "entire argument about Caremark's federal defense collapses" because "[t]he [People]'s disclaimer does not actually remove Caremark's FEHBA negotiations from the case." (ECF No. 486-4 at 11–12.) Caremark argues it

is "different" than the typical party providing a good or service to the federal government "because it helps OPM 'deliver[] federal benefits to federal beneficiaries,' subject to specific direction and oversight." (*Id.* at 12.)

However, this Court has already determined Caremark has established it was "acting under" a federal officer in providing PBM services under FEHBA. *See supra* § III.B.1.a. While the Court notes the People argue Caremark provides OPM a "normal commercial product" and thereby "a normal commercial relationship between a defendant and a federal officer also fails to demonstrate that the defendant is 'acting under' a federal officer," (ECF No. 486-1 at 21–22 (citing *City & Cnty. of Honolulu v. Sunoco LP*, 39 F.4th 1101, 1108 (9th Cir. 2022)), this Court has already found there is a special relationship between Caremark and OPM whereby Caremark is subject to the "subjection, guidance, or control" of OPM. *Watson*, 551 U.S. at 151; *see supra* § III.B.1.a. Express Scripts was similarly acting under the DoD in carrying out its duties under TRICARE, as "Express Scripts' obligations are described in detail in the TRICARE Contract." (ECF No. 486-3 at 7 ("Through the TRICARE Contract, the DoD establishes the requirements applicable to Express Scripts and dictates nearly every aspect of Express Scripts' responsibilities in supporting TRICARE.").) Moreover, this Court has found that Caremark's rebate negotiations for FEHBA and non-FEHBA conduct are inextricably linked, and Caremark has asserted a colorable federal argument. *See supra* § III.B.3.a.

### D. Remand Pursuant to this Court's Discretionary Authority

Finally, the People contend this Court should use its discretionary authority to remand this matter back to state court. (ECF Nos. 486-1 at 24–25; 486-11 at 14; 486-15 at 6.) In their Supplemental Brief in support of Renewed Motion to Remand, the People additionally argue remand is required in light of the decision in *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S.

22, 44 (2025). (ECF No. 486-15 at 6.) The People insist there is a strong interest in having this case brought by the "state attorney general su[ing] under state law in state court to protect state residents." (ECF Nos. 486-1 at 25; 486-11 at 14.) They further assert it has been established that there is "no evidence of judicial manipulation or forum shopping." (*Id.* (citing Dkt. No. 2:24-cv-11488, ECF No. 109 at 14).)

Express Scripts responds that remand is discretionary, not mandatory as the People suggest, only if the defendant's federal defenses are eliminated, which they have not been. (ECF No. 486-3 at 18.) Even if this Court could remand this matter, Express Scripts argues this Court should not use its discretionary authority to remand because "[t]he convenience and efficiencies gained by an MDL proceeding support continuing to exercise supplemental jurisdiction even after the original bases for federal jurisdiction are eliminated." (*Id.* at 19.) Caremark raises a similar argument, arguing judicial economy, convenience, fairness, and comity all weigh strongly in favor of retaining jurisdiction because: (1) "retaining jurisdiction would allow this case to flow into the MDL, where it could be heard in coordinated nationwide proceedings with the other related cases"; (2) "the [People]'s stated desire to forum shop counsels strongly in favor of retaining the case"; and (3) "any relief granted in this case would directly impact rebate payments that flow back to FEHBA Carriers and effectively become federal funds." (ECF No. 486-4 at 15–17.)

"A federal court may decline to exercise supplemental jurisdiction over state law claims when it dismissed all claims over which it has original jurisdiction." *Doe v. Mercy Catholic Med. Ctr.*, 850 F.3d 545, 567 (3d Cir. 2017); *see Royal Canin*, 604 U.S. at 44 (noting "the court's supplemental jurisdiction over the state claims dissolved" because plaintiff's "deletion of all

federal claims deprived the [d]istrict [c]ourt of federal-question jurisdiction")[16]. "Beyond discretion, a court '*must* decline' exercise of supplemental jurisdiction in cases in which all original jurisdiction claims have been dismissed 'unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.'" *Appelgren v. Recovery Ctrs. of Am.*, Civ. A. No. 24-8351, 2025 WL 360533, at *3 (D.N.J. Jan. 31, 2025) (quoting *Stone v. Martin*, 720 F. App'x 132, 136 (3d Cir. 2017)).

As an initial matter, a district court may decline to exercise supplemental jurisdiction over state law claims "*if* . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c) (emphasis added); *see also New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492, 1508 (3d Cir. 1996) (explaining dismissal of federal jurisdiction-granting claim "triggers a discretionary decision on whether jurisdiction over a state law claim should be declined pursuant to § 1367(c)(3)"). Since the Court has determined the People's post-removal disclaimer statements were not effective to foreclose the possibility that the People would seek to recover for Defendants' actions to assist the federal government with administering FEHBA and TRICARE, there is still an original jurisdiction claim pending.

Even assuming this Court had the discretional authority to remand, it would decline to do so in the interests of "judicial economy, convenience and fairness to litigants." *United Mine*

---

[16] The People contend the decision in *Royal Canin* requires remand because of the People's post-removal disclaimers. (ECF No. 486-15 at 6.) In *Royal Canin*, the Supreme Court made clear that "[w]hen a plaintiff amends her complaint to delete the federal-law claims that enabled removal to federal court, leaving only state-law claims behind, the federal court loses supplemental jurisdiction over the state claims, and the case must be remanded to state court." 604 U.S. at 22. This holding does not apply to this matter because the People's federal-law claims have not been removed. Because the People's post-removal disclaimers are not sufficient to foreclose the possibility that the People would seek to recover for Defendants' actions to assist the federal government with administering FEHBA and TRICARE, this Court does not lose supplemental jurisdiction over the state claims.

*Workers v. Gibbs*, 383 U.S. 715, 726 (1966). To further judicial economy and fairness, this Court exercises jurisdiction over the People's claims, as they are based on the same issues of fact as those claims being litigated in this MDL. *See In re Prudential Ins. Co. of Am. Sales Pracs. Litig.*, 962 F. Supp. 450, 501–02 (D.N.J. 1997). Allowing this matter to proceed with the hundreds of other similar claims proceeding in this MDL would promote both consistency in decision-making as well as judicial efficiency. Otherwise, Defendants will need to litigate this issue in multiple forums, wasting resources and duplicating litigation. Indeed, at this stage, this litigation is no longer in its infancy—the parties are actively working through the discovery phase. (*See* ECF No. 315 (Case Management Order #14) (setting forth detailed and uniform obligations and procedures for plaintiffs' fact sheets and other discovery).) The People would benefit from consolidated discovery, and it would be unfair and inefficient to require Defendants to relitigate the same claims in different courts on opposite sides of the country. *See Cirulli v. Bausch & Lomb, Inc.*, Civ. A. No. 08-4579, 2009 WL 545572, at *3 (E.D. Pa. Mar. 4, 2009) ("Proceeding on an individual basis may inexplicably subject Bausch & Lomb to different discovery schedules and court orders when the bases of each litigation are not remarkably distinguishable. . . . [T]his litigation would benefit from the orderly, consolidated discovery and motions schedule to be provided in the [MDL.]").[17]

---

[17] To the extent the People assert *Heilner v. Foster Wheeler LLC*, Civ. A. No. 22-616, 2022 WL 3045838, at *4 (Aug. 2, 2022) demonstrates that discretionary remand is proper in this instance, the Court finds it unavailing and inapplicable. In *Heilner*, the Middle District of Pennsylvania accepted plaintiff's decision to disclaim any claim against defendant for plaintiff's alleged exposure to asbestos while he served in the Navy. *Id.* at 4. The court particularly noted "[f]rom the beginning of this action, there was never a clear claim against Foster Wheeler for Heilner's alleged exposure [to asbestos] in the Navy; Foster Wheeler itself provided the facts potentially tying its conduct to Heilner's injury." *Id.* Since there were no federal claims, the court found "remand [wa]s appropriate because there [we]re no factors that would weigh in favor of keeping this matter in federal court." *Id.* Here, finding it impossible to separate the federal and non-federal claims, this Court has rejected the People's claim disclaimers. There are still federal claims pending, making federal court the proper venue for this case.

Furthermore, this Court is disquieted by the People's reluctance to contribute to this MDL's common benefit fund. (*See* ECF No. 68 (Case Management Order #4 (Common Benefit Work Product)) (providing for the formation of a common benefit fund for plaintiffs' completed fact discovery, expert reports, and class certification motion in the six years of litigation prior to the entry of the order).) *See also Visser v. Vitamin Shoppe, Inc.*, Civ. A. No. 19-20545, 2021 WL 6010349, at *3 (D.N.J. Dec. 17, 2021) ("Th[e] equitable 'common benefit' doctrine arises from the notion that it would be unjust to allow others to obtain the benefit of plaintiff's lawsuit without contributing to the costs incurred."). Therefore, the People's Motion for Remand pursuant to this Court's discretionary authority is **DENIED**.

## IV.    CONCLUSION

For the reasons set forth above, and for good cause having been shown, the People's Motion to Remand (ECF Nos. 486-1–2, 486-11, 486-12, 486-15) is **DENIED**. An appropriate order follows.


**Date: June 4, 2025**                    */s/ Brian R. Martinotti*
                                          **HON. BRIAN R. MARTINOTTI**
                                          **UNITED STATES DISTRICT JUDGE**

34